UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

KAREN ZAVATSKY,                    :
  Plaintiff,                    :
                          :
v.                                :
                          :    Civil No. 3:00cv844(AVC)
MARCIA ANDERSON, RALPH            :
ARNONE, ANGEL MIRANDA, BETTE      :
RANDLETTE, TERRI LOCKAVITCH-       :
MORABITO, DORTHEA HAMILTON,        :
  Defendants.                    :

**RULING ON THE DEFENDANTS' MOTION TO STRIKE PORTIONS OF
PLAINTIFF'S AFFIDAVIT AND SECOND MOTION FOR SUMMARY JUDGMENT**

This is an action for damages, brought pursuant to 42 U.S.C. § 1983. The plaintiff, Karen Zavatsky, alleges that the defendants, Marcia Anderson, Ralph Arnone, Angel Miranda, Bette Randlette, Terri Lockavitch-Morabito, and Dorthea Hamilton, all employees of the Connecticut department of children and families (DCF), deprived her of the equal protection of the laws in violation of the Fourteenth Amendment to the United States Constitution.

The defendants filed the within motion to strike portions of Zavatsky's affidavit (document no. 66). The defendants also filed the within motion for summary judgment pursuant to Fed. R. Civ. P. 56 (document no. 60), arguing that there are no genuine issues of material fact in dispute.

The issues presented are: (1) whether portions of the affidavits submitted by Zavatsky in opposition to the motion for summary judgment should be stricken because they contain

1

inadmissible hearsay evidence; and (2) whether Zavatsky has raised a genuine issue of material fact that the defendants, with regards to various actions, intentionally treated her differently than others that were similarly situated based upon her sexual orientation.

For the reasons set forth below, the court concludes that: (1) those portions of Zavatsky's affidavit that contain hearsay evidence should be stricken; and (2) Zavetsky has failed to raise genuine issues of material fact that the defendants intentionally treated her differently than others that were similarly situated based upon her sexual orientation.

Consequently, the defendants' motion to strike (document no. 66) is GRANTED in part and DENIED in part, and the defendants' motion for summary judgment (document no. 60) is also GRANTED.

### FACTS

Examination of the complaint, affidavits, pleadings, exhibits, supplemental materials, Local Rule 56 statements and the responses thereto discloses the following undisputed material facts:

Zavatsky, is a social work supervisor for DCF.  DCF has employed Zavatsky since 1993.  Zavatsky, at one time, was the lesbian partner of one Dawn Alston, but no longer maintains a romantic relationship with Alston.  The defendants are or were social workers employed by DCF.

On July 9, 1989, Alston gave birth to a son, Terrel.  Since his birth, Terrel has "suffered from psychological disturbances . . . and as a result has been placed . . . in treatment programs . . . and has been the subject of study an/or intervention by [DCF]."  Zavastky is not Terrel's biological mother, nor is she Terrel's adopted parent or guardian.  Citing to Zavatsky's deposition, the defendants assert that Zavatsky is not an "authorized representative" of Terrel.  Zavatsky does not agree with this statement because, according to Zavatsky, the term "authorized representative" is not defined.[1]  Citing to Zavatsky's deposition, the defendants also assert that Zavatsky had no right of access to DCF records regarding Terrel without the biological mother's permission.  Zavatsky disagrees with this statement.

In 1997, Alston had custody of Terrel.  On November 26, 1997, Anderson, Miranda, and Randlette filed a neglect petition in Connecticut superior court.  The petition alleged that Terrel was being neglected and was "being denied proper care and attention, physically, educationally, emotionally or morally."  Terrel was placed in foster care.  On December 4, 1997, a court

---

[1]In Zavatsky's deposition, she was asked whether she was an authorized representative of Terrel, as defined in Title 17a, section 28(a)(3) of the Connecticut General Statutes, as "a parent, guardian, conservator or other individual authorized to assert the confidentiality or right of access to records of a person."  Zavatsky responded that she was not a parent, guardian, conservator or other individual authorized to assert the confidentiality or right of access to records of [Terrel].

upheld the order of temporary custody placing Terrel in foster care.

Zavatsky asserts that the defendants denied her immediate visitation with Terrel on Thanksgiving, 1997. Zavatsky asserts that on December 16, 1997, she contacted Anderson and left two messages with Anderson's assistant. Zavatsky asserts that she called Anderson a third time and Anderson took her call. Zavatsky asserts that she requested that Anderson allow her to visit Terrel before Christmas. Anderson did not call Zavatsky back that day regarding her visitation request. Zavatsky asserts that Anderson called her on December 17, 1997, and told her that she needed a "release of information" form signed by Alston before she could talk to Zavatsky about Terrel's case. Zavatsky asserts that she was not asking for information and that she "just wanted to visit and 'Releases of Information' weren't required for that." Zavatsky also asserts that "[t]here has not been a single case in 8 years when a release has been requested or required for a visit." In addition, Zavatsky asserts that "[t]en days prior to this conversation [with Anderson,] [Zavatsky's] Program Supervisor Doreen Jordan stated that non-relatives who have a psychological relationship with children in placement have a right to visit and all DCF staff should be making sure of this on their caseloads." Zavatsky asserts that Alston previously had informed Anderson that Zavatsky would like visitation with Terrel.

4

On December 19, 1997, Alston gave Zavatsky written permission to visit with Terrel. Zavatsky asserts that the form that Alston used to grant Zavatsky permission to visit Terrel "[was] made up and is non-existent in DCF policy. It has never been used before and in 8 years I have never seen anything like it."[2] Zavatsky asserts that on December 19, 1997, she sent a letter to Miranda, Anderson's supervisor, requesting visitation and outlining her position at DCF and her qualifications.

Zavatsky asserts that on December 23, 1997, Anderson called Alston to cancel Alston's scheduled visit with Terrel for that day. Zavatsky asserts that Anderson refused to tell her when she would be able to visit with Terrel. Zavatsky asserts that later that day, Miranda called to tell her that Alston's visit was rescheduled to December 31, 1997. The visit was to take place at McDonald's in Bridgeport between 4 and 6 p.m. Zavatsky asserts that Miranda "said [Zavatsky] could show up [at the visit] but [she] couldn't have [her] own visit."

On December 31, 1997, Zavatsky visited with Terrel. Zavatsky asserts that, because she had to work at DCF in New Haven until 5 p.m., by the time she arrived in Bridgeport, she had only fifteen to twenty minutes to visit Terrel. Zavatsky

---

[2]The document, printed on DCF letterhead, that Alston signed read: "I, Dawn Alston, do give permission for my friend Karen to visit with my son Terrel Alston as DCF permits." According to DCF regulations, there are only two approved release forms: DCF-2131, Authorization for Release of non-HIV Related Information and DCF-2134, HIV Authorization for Release of Information.

further asserts that, during the visit, she had to leave to
purchase a prepaid phone card so that Terrel could call Alston
and Zavatsky.  Zavatsky stated that she "[could] not recall a
single case where a parent or anyone has had to purchase a phone
card for a child to use to call.  It is the child's right and the
phone calls are covered by foster care funds."

Zavatsky further asserts that on January 19, 1998, Alston
and Terrel had another scheduled meeting at McDonald's at 4 p.m.
Zavatsky asserts that she asked Lockavitch-Morabito for a later
visit to accommodate her work schedule, but Lockavitch-Morabito
refused.  According to Zavatsky, Lockavitch-Morabito stated that
she could not accommodate Zavatsky's request for a later visit
because she has "strict working hours."  Zavatsky asserts,
however, that DCF employees often work overtime to accommodate
job commitments.  As a result, Zavatsky requested vacation time
at the last minute.  According to Zavatsky, on both of these
visits, two DCF workers supervised the visitation.  Zavatsky
asserts that "[t]his is only done for a risk of flight which
appears highly unlikely.  If the risk was so great, they would
have done the visit at DCF."

Zavatsky asserts that she again met with Terrel on January
27, 1998, at McDonald's after she got out of work.  Again, two
social workers supervised her visit.  According to Zavatsky, even
though she was only able to visit with Terrel for approximately
15 minutes, due to her work schedule, Lockavitch-Morabito refused

to extend the visit.

Zavatsky asserts that on January 29, 1998, she attended a meeting at DCF in Norwalk with Alston and defendants Arnone, Hamilton and Lockavitch-Morabito, to discuss, among other topics, the phone call situation and the visitation schedule.  According to Zavatsky, Arnone, after dismissing the others, "grew visibly angry and shouted . . . ' Karen, you are not a relative and Terrel is not your child.  You have no right to visit and we don't have to let you see the child at all.  We are only allowing it because the mother wants you there.'"

Zavatsky asserts that on March 5, 1998, DCF held an administrative review of Terrel's treatment plan.  Because Zavatsky was in training in Hartford, she was left out, even though, as Zavatsky asserts, she should have been included in family planning.

Zavatsky asserts that on March 16, 1998, she and Alston, met with several in-home service providers from Boys Village, including one Amy Benfer.  Zavatsky asserts that on March 17, 1998, during a phone conversation with Benfer, Benfer stated: "I get the feeling that because of who you are, a gay DCF social work supervisor, you make a lot of people very nervous."  Zavatsky further asserts that Benfer told her that Lockavitch-Morabito "has a problem working with homosexuals."

Zavatsky asserts that on April 23, 1998, Terrel was returned to Alston and Zavatsky, and the Order of Temporary Custody was

vacated.

The defendants assert that they accommodated Zavatsky's schedule so that she could visit with Terrel after regular business hours.  The defendants also assert that they did not deny Terrel the right to telephone Zavatsky.

Zavatsky's complaint alleges that in violation of DCF's own rules, the defendants refused: (1) to provide Zavatsky and Alston with a family treatment plan; (2) to provide Zavatsky and Alston with a treatment planning conference; (3) to provide Zavatsky and Alston with an individual treatment plan for Terrel until March 5, 1998; (4) to grant Zavatsky visitation with Terrel "until long after he was taken into the department's custody"; (5) to allow Zavatsky to see Terrel on Thanksgiving, 1997; (6) to allow Zavatsky to visit Terrel on Christmas, 1997; (7) to provide Zavatsky telephone communication with Terrel; and (8) to include Zavatsky in their family reunification planning.  Zavatsky asserts that had she been a member of a heterosexual couple, she would not have been treated in this manner.

On February 21, 2002, the defendants filed their first motion for summary judgment.  In that motion, the defendants contended that judgment should be granted in their favor because, inter alia, Zavestky had failed to raise an issue of material fact that these alleged inactions were due to discrimination based on Zavetsky's sexual orientation.  This court denied the motion, concluding, in part, that: (1) based on seven cases of

8

allegedly similarly situated individuals, identified by Zavetsky
in her affidavit submitted in opposition to the motion for
summary judgment, issues of material fact existed as to whether
Zavetsky was intentionally treated differently than similarly
situated individuals; and (2) based on various statements recited
in Zavatsky's affidavit made by two defendants relating to
Zavatsky's sexual orientation, issues of material fact existed
regarding whether there was purposeful discrimination against
Zavatsky based on her sexual orientation.[3]

On November 4, 2002, the defendants filed a motion seeking
leave from this court to depose the plaintiff a second time.  The
defendants contended that a second deposition was necessary
because the evidence of the seven similarly situated individuals,
relied on by Zavetsky in her affidavit, was never revealed to the
defendants.  The court granted the motion.  On March 18, 2003,
the defendants filed a motion with the court seeking leave to
file a second motion for summary judgment.  That motion was
granted, and the within second motion for summary judgment was
subsequently filed.

## STANDARD

On a motion for summary judgment, the burden is on the
moving party to establish that there are no genuine issues of
material fact in dispute, and that it is entitled to judgment as

---

[3]In that same opinion, this court also considered and rejected
the defendants' claim of qualified immunity.

a matter of law. <u>See</u> Fed. R. Civ. P. 56(c); <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 256 (1986). A dispute regarding a material fact is genuine "'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" <u>Aldrich v. Randolph Cent. Sch. Dist.</u>, 963 F.2d 520, 523 (2d Cir.), <u>cert. denied</u>, 506 U.S. 965 (1992) (quoting <u>Anderson</u>, 477 U.S. at 248). The court resolves "all ambiguities and draw[s] all inferences in favor of the nonmoving party in order to determine how a reasonable jury would decide." <u>Aldrich</u>, 963 F.2d at 523. Thus, "[o]nly when reasonable minds could not differ as to the import of the evidence is summary judgment proper." <u>Bryant v. Maffucci</u>, 923 F.2d 979, 982 (2d Cir.), <u>cert. denied</u>, 502 U.S. 849 (1991).

## DISCUSSION

### Motion to Strike

The defendants contend that portions of the Zavatsky's affidavits submitted in opposition to the motion for summary judgment should be stricken because "[Zavatsky] repeatedly relies on inadmissable hearsay [and double hearsay] of third-parties." Zavetsky responds that the motion to strike should be denied because "hearsay evidence, while not admissible in support of a motion for summary judgment, is sufficient to defeat summary judgment so long as there is reason to believe that the evidence can be offered in an admissible form at trial."

Federal Rule of Civil Procedure 56(e) provides, in part, that: "Supporting and *opposing* affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Fed. R. Civ. P. 56(e) (emphasis added).  Hearsay evidence is generally not admissible at trial.  See Fed. R. Evid. 802.  Thus, generally speaking, "[h]earsay testimony . . . that would not be admissible if testified to at the trial may not properly be set forth in [the Rule 56(e)] affidavit."  H. Sand & Co., Inc. v. Airtemp Corp., 934 F.2d 450, 454-55 (2d Cir. 1991) (internal citations and quotation marks omitted; alterations in original). Nevertheless, an affiant may overcome this bar and rely on inadmissable hearsay, provided that she makes a "showing that admissible evidence will be available at trial."  Burlington Coat Factory Warehouse Corp. v. Esprit De Corp., 769 F.2d 919, 924 (2d Cir. 1985).

Applying these principles, the court concludes that the motion to strike should be granted in part and denied in part. The defendants seek to strike: (1) paragraphs 14, 16, 22, 29, 33, 36, 37, 39, 41, 42, 43, 45, and 46 of Zavetsky's affidavit submitted in opposition to the first summary judgment motion, and relied on in her opposition to the second motion for summary judgment; and (2) paragraphs 5, 6, 10, 11, 12, 13, 14, 15, 22,

26, 27, 29, 31, 38 and 44 of Zavetsky's affidavit submitted in opposition to the defendants' second motion for summary judgment. Having reviewed the paragraphs at issue, the court concludes that paragraph 26 of the affidavit submitted in support of the first motion for summary judgment, is not hearsay. Paragraph 26 contains statements made by Arnone, a party to this litigation. The statements are therefore admissions by a party opponent, which is not hearsay. See Fed. R. Evid. 801(d)(2). Consequently, paragraph 26 contains evidence that is admissible at trial and the motion to strike is therefore denied with regard to paragraph 26. With regard to the other paragraphs identified, the court concludes that they contain hearsay evidence. Indeed, aside from the conclusory claim that the "plaintiff generally disputes that" the statements are hearsay, Zavetsky does not argue otherwise.

Additionally, Zavetsky's two page response to the defendants' motion to strike fails to make any showing that the multiple statements at issue will be admissible at trial in any form. Rather, Zavetsky's response states only that the challenged paragraph are "clearly of a type which can be presented in admissible form at trial," and fails to articulate how these statements would be admissible. Accordingly, absent a showing that the challenged evidence will be admissible at trial, the inadmissible hearsay statements should not be considered. See Burlington Coat Factory Warehouse Corp. v. Esprit De Corp.,

769 F.2d 919, 924 (2d Cir. 1985).  The motion to strike the

portions of the affidavit is therefore GRANTED in part and DENIED

in part.[4]

### Motion for Summary Judgment

1.    Underline: Whether the Defendants Were Aware That Similarly Situated
      Individuals Were Treated Differently

The defendants first contend that summary judgment should be

granted because Zavatsky has failed to raise a genuine issue of

material fact that the defendants intentionally and consciously

applied a different standard of treatment to her as compared to

similarly situated individuals.  Specifically, the defendants

contend that, in order to succeed on a claim of selective

enforcement, Zavatsky must prove that the individual "defendants

. . . [had] knowledge of other similarly situated individuals

[that] were treated differently . . . ."  Thus, according to the

defendants, because there is no evidence that the defendants knew

that others were treated differently, the motion for summary

judgment should be granted.

Zavestky, implicitly conceding the knowledge requirement,

responds by stating that "the defendants can be found by

_____

[4]The defendants have also moved to strike other portions of
Zavetsky's affidavits on the ground that they relate to facts and
occurrences that are irrelevant to the allegations contained in the
complaint.  To the extent that the affidavit contains irrelevant
material, the court has not considered that material in ruling on the
motion for summary judgment.  Consequently, the motion to strike the
paragraphs that contain irrelevant material is DENIED as moot.

circumstantial evidence, at the very least, to have been aware of
the fact that the plaintiff was treated differently . . . ."

The gravamen of Zavatsky's claim is that, because of her
sexual orientation, she was treated dissimilarly from how the DCF
had traditionally treated heterosexual "significant others."
Namely, she claims that heterosexual "significant others" were
treated like biological or adoptive parents, while she was not.
Thus, Zavatsky's equal protection claim is essentially a
selective treatment cause of action.  "[A] selective [treatment]
. . . claim based on the Equal Protection Clause must allege[,
inter alia,] that . . .the [plaintiff], compared with others
similarly situated, was selectively treated . . . ."  Giordano v.
City of New York, 274 F.3d 740, 750-51 (2d Cir. 2001) (internal
quotations omitted).  Ordinarily, to succeed in proving that she
was selectively treated, the plaintiff must prove that the
defendants knew that others were treated differently than her.
Latrieste Restaurant v. Village of Port Chester, 188 F.3d 65, 70
(2d Cir. 1999).

In Latrieste Restaurant v. Village of Port Chester, 188 F.3d
65, 69-70 (2d Cir. 1999), the court held that a plaintiff
"ordinarily cannot establish an equal protection violation unless
it shows that the [defendant] . . . consciously applied a
different standard of enforcement to similarly situated
establishments," and, thus, where there is no evidence that the
defendants knew that others were treated differently, there can

14

be no equal protection claim.  In <u>Latrieste</u>, the plaintiff, a
topless bar, was served with notices of violation by the Village
of Port Chester based on the fact that topless entertainment had
taken place before 10:00 p.m., in violation of the applicable
zoning restriction.  <u>Latrieste Restaurant</u>, 188 F.3d 65, 70 (2d
Cir. 1999).  The plaintiff brought suit against the village
alleging that other similarly situated individuals who had
violated the same restriction were treated differently, namely,
no action by the village was taken at all.  After a trial on the
merits, the evidence clearly indicated that, as the plaintiff
alleged, others were treated differently.  <u>Latrieste Restaurant</u>,
188 F.3d 65, 69 (2d Cir. 1999).  Nevertheless, there was no
evidence that the village had known about the previous violations
by similarly situated individuals.  <u>Latrieste Restaurant</u>, 188
F.3d 65, 69 (2d Cir. 1999).  The magistrate judge who heard the
case nonetheless concluded that knowledge of the other violations
was not essential, and rendered a verdict in favor of the
plaintiff.  <u>Latrieste Restaurant</u>, 188 F.3d 65, 69 (2d Cir. 1999).
The defendant appealed.

On appeal, the court rejected the magistrate's conclusion
that evidence of knowledge was unnecessary.  The court explained
that, "[m]ere failure to prosecute other offenders is not a basis
for a finding of denial of equal protection.  Instead, selective
prosecution implies that a selection has taken place."  <u>Latrieste</u>
<u>Restaurant</u>, 188 F.3d 65, 69 (2d Cir. 1999) (citations omitted).

Consequently, the court concluded that, "[a]bsent a showing that the Village knew of other violations, but declined to prosecute them, [the plaintiff] would ordinarily be unable to show that it was treated selectively." Latrieste Restaurant, 188 F.3d 65, 69 (2d Cir. 1999). The court therefore reversed the ruling of the trial court.

In Giordano v. City of New York, 274 F.3d 740 (2d Cir. 2001), the second circuit reaffirmed the holding of Latrieste. In Giordano, the plaintiff, a New York City police officer who was terminated because he was taking a specific medication, alleged that his equal protection rights were violated because other New York City police officers who were taking the same drug had not been terminated. Giordano v. City of New York, 274 F.3d 740, 750 (2d Cir. 2001). There was, however, "no evidence in the record that would support a jury finding that those responsible for terminating him because of his [prescription drug use] knew that they were treating him differently from anyone else." Giordano, 274 F.3d 740, 751 (2d Cir. 2001). "Absent some evidence of this knowledge, no reasonable juror could infer that the defendants intended to treat Giordano differently from other NYPD officers," and thus, no reasonable juror could conclude that the plaintiff suffered "*intentional* discrimination." Giordano, 274 F.3d 740, 751 (2d Cir. 2001) (emphasis in original). Accordingly, the court affirmed the trial court's grant of

16

summary judgment.

Applying these principles, the court concludes that Zavatsky has failed to raise an issue of fact that five of the six defendants, namely, Anderson, Miranda, Randlette, Lockavitch-Morabito and Hamilton, knew that others were treated differently. The only evidence presented with regard to similarly situated individuals who were treated differently are nine individual cases identified by the plaintiff. Anderson, Miranda, Randlette, Lockavitch-Morabito and Hamilton, however, have all submitted affidavits that state that they have no personal knowledge of, and were not involved in, the nine cases cited by Zavatsky.[5] Further, during her deposition, Zavatsky stated that she did not "know what [the defendants] knew" about the these nine cases. Thus, there is no evidence that these five defendants had any knowledge of the cases relied upon by Zavatsky.

Zavatsky nevertheless contends that the "defendants can be found by circumstantial evidence, at the very least, to have been aware of the fact that the plaintiff was treated differently, whether or not they knew of the nine specific cases the plaintiff

---

[5]The affidavits submitted are admittedly slightly confusing on this point. The affidavits actually state that the affiants neither had knowledge of, nor were involved with, the cases of various individuals, which the affidavits identify by name. The affidavits however do not indicate whether these particular individuals identified by name are the same individuals involved in the nine cases relied upon by Zavatsky. It is nevertheless reasonable to assume that the nine cases do indeed correlate with the names identified in the affidavits, particularly since Zavatsky has not challenged the affidavits.

17

has cited, because those nine cases were typical of standard DCF

handling of cases involving [unmarried] 'significant others' of

biological parents." Aside from this conclusory statement,

however, Zavatsky has failed to identify any circumstantial

evidence from which this court can infer such knowledge. Absent

such knowledge on the part of the defendants, Zavatsky cannot

prevail on her claim that Anderson, Miranda, Randlette,

Lockavitch-Morabito and Hamilton intentionally discriminated

against her.[6] See Giordano v. City of New York, 274 F.3d 740,

751 (2d Cir. 2001). Accordingly, the motion for summary judgment

is GRANTED with respect to Anderson, Miranda, Randlette,

Lockavitch-Morabito and Hamilton.

With regard to Arnone, the court concludes that an issue of

fact exists regarding whether he had knowledge regarding at least

one of the cases relied on by Zavatsky. As Arnone's affidavit

indicates, he was involved in a case where the DCF permitted the

same-sex partner of a biological parent to visit with her

partner's child. Thus, it is clear that Arnone had knowledge of

one of the cases cited by Zavatsky. Arnone attempts to avoid the

implications of this knowledge by claiming that the

---

[6]Zavatsky also contends that there may be more cases where
similarity situated individuals were treated differently, but that
she is unaware of them. There is no evidence of such additional
cases, nor is there evidence that any of the defendants were aware of
the additional cases. In the absence of any such evidence, the court
will not speculate that additional cases may exist, and, further,
that the defendants were aware of them.

determinations regarding the parameters of visitation in the instant case were made before he became involved.  The court is not persuaded.

First, Arnone fails to indicate how the fact that he was not involved in the visitation determinations in the instant case alters the fact that he was nevertheless aware that an individual other than Zavatsky was treated differently.  Second, to the extent that Arnone is claiming that he did not discriminate against Zavatsky because he never elected to treat her differently as he was not involved in determining the parameters of visitation, the evidence arguably indicates otherwise.  More specifically, according to Zavatsky's affidavit, Arnone was at a meeting where the topic of visitation was discussed. Accordingly, the court concludes that there is a question of fact as to whether Arnone knew of cases where others were treated differently.

2.   <u>Motivation for Selective Treatment</u>

Arnone nevertheless contends that summary judgment is warranted on the ground that there is no evidence that Zavatsky was intentionally treated differently because of her sexual orientation.  Specifically, Arnone claims that "the record is devoid of any evidence that any of the defendants intentionally treated [Zavatsky] differently because of her sexual orientation."

Zavatsky responds that, "motivation is [irrelevant] to the equal protection analysis." Relying on the case of <u>Village of Willowbrook v. Olech</u>, 528 U.S. 562 (2000), Zavatsky claims that an equal protection plaintiff need only plead and prove: "(1) disparate treatment and (2) lack of a rational basis for the disparity." Thus, according to Zavatsky, because she has established disparate treatment she need only show that there was no rational basis for such treatment.

"To prevail on a claim of selective enforcement, plaintiffs in this Circuit traditionally have been required to show both (1) that they were treated differently from other similarly situated individuals, and (2) that such differential treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." <u>Harlen Associates v. Incorporated Village of Mineola</u>, 273 F.3d 494, 499 (2d. Cir. 2001) (internal quotation marks omitted). In other words, with regard to the second element, this Circuit has traditionally required that a plaintiff alleging selective treatment show an illicit motivation or animus on the part of the defendant. <u>See Giordano v. City of New York</u>, 274 F.3d 740, 751 (2d Cir. 2001).

Zavatsky simply cannot show that Arnone was motivated by any animus towards Zavatsky. Zavatsky contends that the illicit motivation was his dislike for her because of her sexual

orientation.  The only evidence submitted with regard to any such
alleged dislike are statements made to Zavatsky by Amy Benfer, a
non-party.  Benfer stated that: "I get the feeling that because
of who you are, a gay DCF social work supervisor, you make a lot
of people very nervous."  These statements, which are recited in
Zavatsky's affidavit, were stricken based on the fact that they
are inadmissible hearsay evidence and because Zavatsky failed to
make any showing how these statements would be admissible at
trial.  Absent these statements, there is no support for the
claim that Arnone's actions were motivated by an animus towards
her because she was a homosexual.

Zavatsky, relying on Village of Willowbrook v. Olech, 528
U.S. 562 (2000), nevertheless contends that she need only allege
that Arnone's actions were irrational.  In Olech, the United
States Supreme Court concluded that a plaintiff could maintain an
equal protection cause of action by alleging simply that the
defendant had intentionally treated the plaintiff's differently
from other similarly situated individuals and that such treatment
was irrational and wholly arbitrary.  Village of Willowbrook v.
Olech, 528 U.S. 562, 564-65 (2000).  The Court expressly
concluded that "quite apart from the [defendant's] subjective
motivation, [such allegations] are sufficient to state a claim
for relief under traditional equal protection analysis."  Village
of Willowbrook v. Olech, 528 U.S. 562, 564-65 (2000).  In the
wake of Olech, some courts have concluded that a plaintiff

alleging selective treatment is no longer required to allege any
ill will or animus on the part of the defendant. See, e.g.,
Russo v. City of Hartford, 184 F.Supp. 2d 169, 190 (D. Conn.
2002). Rather, these courts have permitted plaintiffs to proceed
under either a claim that the defendants were: (1) motivated by
ill will; or (2) that there was no rational basis for the
defendant's actions. On the other hand, other courts have
continued to require the plaintiff to allege ill will or animus.
See, e.g., Shipp v. McMahon, 234 F.3d 907, 916 (5th Cir. 2000).

The Second Circuit, however, has yet to decide what effect
Olech had on its traditional requirement that a plaintiff allege
animus on the part of the defendant. See, Hayut v. State
University of New York, 352 F.3d 733, 754 n.15 (2d Cir. 2003)
(declining "to resolve whether Olech changed this Circuit's
requirement that a class of one plaintiff alleging an
equal-protection violation show an illicit motivation"). Thus,
the issue of whether a plaintiff alleging a claim of selective
enforcement can succeed by alleging simply that the governmental
action was irrational and wholly arbitrary is still undecided in
this circuit. Nevertheless, this court need not decide the issue
because its resolution would have no impact on the court's
ultimate determination.

First, Zavatsky has never alleged that Arnone's acts were
irrational and wholly arbitrary, but rather that they were
motivated by a dislike for her because she was a homosexual.

Thus, while <u>Olech</u> may permit a plaintiff who claims selective treatment to challenge the governmental action on the ground that it was irrational and wholly arbitrary, Zavatsky has alleged no such claim in this case.  Second, to the extent that Zavatsky *now* claims that Arnone's decision lacks a rational basis because it was motivated by an irrelevant consideration, namely, sexual orientation, the court is not persuaded.  As noted above, Zavatsky has failed to adduce any evidence that Arnone was motivated by his alleged dislike for homosexuals.  Third, other than her claim that Arnone's actions were motivated by his dislike for her because of her sexual orientation, Zavatsky has failed to identify any other evidence in support of a claim that Arnone's actions were irrational and wholly arbitrary. Consequently, even if the court were to assume that Zavatsky could maintain a selective treatment claim by alleging simply that Arnone's actions were irrational and wholly arbitrary, Zavatsky would nevertheless not prevail.  Based on this, the court concludes that Zavatsky's reliance on <u>Olech</u> is misplaced. Therefore, the motion for summary judgment with regard to Arnone is GRANTED.[7]

--------

[7]The defendants also contend that summary judgment should be granted on the following grounds: (1) Zavatsky is not similarly situated to the cases where she claims others were treated differently; (2) Zavatsky was not, in fact, treated differently than other non-biological significant others; and (3) the defendants are entitled to qualified immunity.  Having concluded that summary judgment is warranted on other grounds, the court does not reach these issues.

**CONCLUSION**

Based on the foregoing reasons, the defendants' motion to strike (document no. 66) is GRANTED in part and DENIED in part. Additionally, the defendants' motion for summary judgment (document no. 60) is GRANTED.

It is so ordered this __8TH__ day of March, 2004 at Hartford, Connecticut.

Alfred V. Covello
United States District Judge

24